UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**SCHELLEY A. FERN,**

**Plaintiff,**

      v,

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

          **Case No. 1:18-cv-1297-TPK**

          **OPINION AND ORDER**

## OPINION AND ORDER

Plaintiff Schelley A. Fern filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on September 25, 2018, denied Ms. Fern's applications for disability insurance benefits and for supplemental security income. Ms. Fern has now moved for judgment on the pleadings (Doc. 9) and the Commissioner has filed a similar motion (Doc. 10) . For the following reasons, the Court will **GRANT** Plaintiff's motion, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## I.  BACKGROUND

Plaintiff's applications for disability insurance benefits and for supplemental security income were filed on March 18, 2015. She alleged that she became disabled on February 8, 2015, primarily due to diabetes, asthma, and congestive heart failure. She was 48 years old at the time these applications were filed.

After initial administrative denials of her claim, Plaintiff appeared at an administrative hearing held on October 6, 2017. Plaintiff and a vocational expert, Mr. Preston, testified at the hearing.

The Administrative Law Judge issued an unfavorable decision on October 24, 2017. She concluded that Plaintiff suffered from several severe impairments including lumbar spine degenerative disc disease, status-post February 7 to March 16, 2015 hospitalization for pyelonephritis/sepsis with residuals of hoarseness of the voice, insulin dependent diabetes mellitus, hypertension, and obesity. According to the ALJ, these impairments limited Plaintiff to the performance of a reduced range of light work. She could sit and stand for six hours each during a

workday, but for only two hours at a time, and could occasionally climb, stoop, kneel, crouch, and crawl, and balance. She also had to avoid concentrated exposure to dust, odors, fumes, gases, and poor ventilation, and she could not work at unprotected heights or around dangerous moving machinery, Lastly, she was limited to the performance of work which was not fast paced or which involved high production goals, which involved more than brief and superficial contact with others, and which did not involve mor than frequent speaking.

Mr. Preston, the vocational expert, was asked about whether a person with that work capacity could do either Plaintiff's past work (which consisted of cashier and bus aide) or other jobs. He said that someone with those limitations could not do either of the past jobs but could work as a price marker, routing clerk, mail sorter, document specialist, or officer helper. The ALJ accepted this evidence, along with testimony about the number of these jobs which exist in the national economy, and found that because Plaintiff could still perform substantial gainful activity, she was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment on the pleadings, asserts that there are two separate reasons for reversing the ALJ's decision and remanding the case. She argues, first, that the ALJ did not have the benefit of a medical opinion assessing her residual functional capacity and therefore impermissibly based that assessment on her own lay opinion. Second, she contends that the sit/stand option included in the ALJ's residual functional capacity finding was also unsupported by any medical evidence.

## II.  THE KEY EVIDENCE

Plaintiff's statement of errors focuses on the absence of a medical opinion that supports the ALJ's residual functional capacity finding. A comprehensive summary of the evidence is not needed in order to address that issue, but the Court will summarize briefly the evidence concerning Plaintiff's medical conditions and treatment.

Plaintiff testified at the administrative hearing that she took medication for diabetes, asthma, anxiety, and high blood pressure. She also had a back problem, diagnosed by x-ray, and had gone to physical therapy but it did nothing for her. Her primary physician had told her she was disabled because she could neither sit nor stand for any length of time and because she had shortness of breath. She said that if she walked even a block, she had to stop three times to rest due to problems with her back and legs. She lived alone and did some household chores but only in spurts. Her daughters usually accompanied her on grocery shopping trips because she could not lift anything heavier than a gallon of milk. She also experienced numbness in her feet and legs from diabetic neuropathy, and she had back pain that radiated into her legs, also making walking difficult. There were days that she was unable to get out of bed.

The medical record shows that Plaintiff spent more than a month in the hospital in early 2015. Her discharge diagnoses included acute respiratory failure, status post tracheostomy, acute polynephritis with septic shock, congestive heart failure pneumonia, cardiomyopathy, hypertension, diabetes, suspected acute respiratory distress syndrome, right cephalic partial

occluding thrombosis, deconditioning, dysphagia, abnormal liver function related to sepsis, anemia, hypomagnesiemia, thrombocytopenia, hypokalemia, and asthma.  Many of these conditions had resolved by the time of her discharge.  She was given various medications and instructed to follow up with her primary care physician.  (*See* Tr. 340-42).

Plaintiff's follow-up care included treatment for her diabetes and congestive heart failure as well as her complaints of low back and leg pain.  She also reported a chronic cough and wheezing, most likely due to asthma.   Later treatment notes show that her cardiomyopathy had improved but she was still at risk for coronary artery disease.  She was, however, unable to walk on a treadmill to do a stress test due to COPD.  In 2017, she was still reporting low back pain and taking an acetaminophen-codeine tablet as often as every six hours.  (Tr. 752).  Her diagnoses at that time included lumbago with sciatica.  She also reported radiating pain and numbness into her right buttock and thigh.  (Tr. 757).  When she sought physical therapy in April, 2017, following an onset of what she described as insidious back pain, her gait and mobility were impaired and she had difficulty preforming self-care activities of daily living.  (Tr. 890).

A psychiatric consultative examination was performed by Dr. Santarpia, a psychologist, on June 2, 2015.   Plaintiff said she was taking medication for anxiety but had never had psychiatric treatment.  Her medication was somewhat helpful.  Her affect was appropriate and her mood was euthymic.  Dr. Santarpia concluded that Plaintiff could follow and understand simple instructions and perform simple tasks adequately while maintaining attention and concentration.  She could also deal adequately with work stress and with others in the workplace.  Her diagnosis included adjustment disorder with anxiety, and her prognosis was fair.  (Tr. 606-09).

She was also seen for a consultative physical examination that day.  The examiner, Dr. Miller, diagnosed diabetes, asthma, congestive heart failure, and hoarseness.  Dr. Miller found few abnormalities on examination, and opined only that Plaintiff should avoid irritants that would exacerbate her asthma.  No physical functional limitations (or abilities) were noted.  (Tr. 610-13).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112

> (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

### IV.  DISCUSSION

The issue presented in this case has been a recurring one in this District.  Three recent cases on this judicial officer's docket have involved the issue: *Riley v. Comm'r of Social Security*, 2019 WL 5287957 (W.D.N.Y. Oct. 17, 2019); *Rubin v. Comm'r of Social Security*, 2019 WL 4593518 (W.D.N.Y. Sept. 23, 2019); and *Ford v. Comm'r of Social Security*, 2019 WL 4297873 (Sept. 11, 2019).  Read together, those decision indicate that when an ALJ makes an informed choice among competing opinions about a claimant's residual functional capacity and that choice finds support in the record, that is not error.  However, when the record is devoid of any opinions as to residual functional capacity, an ALJ may not ordinarily craft one based on treatment notes and the claimant's testimony unless the record is so clear in support of the residual functional capacity finding that no medical opinions are necessary.  Another Judge of this Court, in a case where the Commissioner conceded that there was no medical evidence as to the claimant's physical functional limitations, expressed the operative principles this way:

> What is not found in the record, however, is how these physical impairments impact plaintiff's ability to work. Where the record does not "contain a useful assessment of Plaintiff's physical limitations," *Monroe* (*v. Comm'r of Social Security*, 676 Fed. Appx. 5 (2d Cir. Dec. 27, 2018)) is of no help to the Commissioner. *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 293 (W.D.N.Y. 2018); *see Williams v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 411, 417 (W.D.N.Y. 2019) (remanding where "no acceptable medical source provided an opinion regarding Plaintiff's RFC, and there are no underlying documents supporting any such evaluation"). ..."While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.' " *Muhammad v. Colvin*, No. 6:16-CV-06369(MAT), 2017 WL 4837583, at *4(W.D.N.Y. Oct. 26, 2017) (quoting another source). "Thus, 'the ALJ may not interpret raw medical data in functional terms.' " *Quinto v. Berryhill*, No.

3:17-CV-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (*quoting Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 911-13 (N.D. Ohio 2008)).

*Bartha v. Comm'r of Soc. Sec.*, 2019 WL 4643584,*3 (W.D.N.Y. Sept. 24, 2019).  Plaintiff has cited to at least five other decisions from this Court, handed down in 2019, where cases like this one have been remanded for further proceedings.  *See* Doc. 9, at 21.  The Commissioner's memorandum does not cite to, or attempt to distinguish, any of these decisions.  Rather, as in the *Bartha* case, the Commissioner relies on *Monroe* and other similar decisions to argue that if there is sufficient evidence in the record to support an ALJ's decision as to residual functional capacity, a specific medical opinion supporting that decision is not necessarily required.  *See* Doc. 10, at 6.

Here, as in *Bartha*, there does not appear to be any useful assessment of Plaintiff's physical capabilities in any of the various medical records.  The ALJ acknowledged that she had severe impairments which "could reasonably be expected to cause [her] alleged symptoms...." (Tr. 45).  Without some indication from either a medical report or a medical expert as to Plaintiff's functional capabilities, the ALJ simply had no basis for crafting a residual functional capacity - especially one so specific as to include the need to alternate positions between sitting and standing every two hours.  While Plaintiff may well have the ability to work at some exertional level, the record here did not permit the ALJ to determine exactly what she could and could not do.  Consequently, the RFC finding she made - and which formed the basis for the vocational expert's testimony that certain jobs were available to Plaintiff - lacked a substantial basis in the record.  For that reason, this case will be remanded to the Commissioner for further proceedings.

## V.  CONCLUSION AND ORDER

For the following reasons, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings, (Doc. 9), **DENIES** the Commissioner's motion (Doc. 10), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**